UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RONALD JORDAN

-vs-                                                        Case No.  6:06-cv-1446-Orl-19KRS

JAMES R. MCDONOUGH, et al.,

     Respondents.

## ORDER

This case comes before the Court on the following:

1.     Petition Under 28 U.S.C. section 2254 for Habeas Corpus by a Person in State Custody

(Doc. No. 1, filed Sept. 20, 2006);

2.     Response of the State of Florida to Petition for Writ of Habeas Corpus (Doc. No. 8, filed

Jan, 8, 2007); and

3.     Amended Traverse/Reply to Response to Habeas Petition (Doc. No. 14, filed Mar. 9,

2007).

### Background

On November 2, 2001, Petitioner Ronald Jordan was convicted in a Florida state court of

various offenses arising from a high speed police chase.  (Ex. C, pp. 297-99.)  After the Florida

courts denied Petitioner's direct appeal and motion for post conviction relief, he filed this petition

for a writ of habeas corpus.  (Doc. No. 1.)

Petitioner was charged on November 7, 2000, with grand theft of a motor vehicle, aggravated

fleeing and eluding, resisting a law enforcement officer without violence, and driving with a

suspended license. (Ex. A.) The State later filed an amended information, adding aggravated assault

upon a law enforcement officer as a fifth count. (Ex. B.) Petitioner proceeded to trial on all five counts. (*See generally* Ex. C.) His trial began on November 1, 2001, and lasted two days.

During the proceedings, the prosecution elicited the following testimony. William Hollie testified that on October 9, 2000, he borrowed a car from Howard Carter and decided to give Petitioner a ride. (Ex. C, pp. 196-97.) After picking up Petitioner, Hollie drove to a "Lil' Champ Food Store" to get gasoline. (*Id.* at p. 198.) As Hollie went to pay for the gasoline, he realized that he had forgotten his wallet and returned to the car to retrieve it. (*Id.* at pp. 198-99.) However, once Hollie walked outside the store, he saw that the wallet, the car, and Petitioner were gone. (*Id.*) The store clerk called the police and reported that a customer had stolen gas. (*Id.* at p. 88.) According to Hollie, Petitioner did not have permission to drive the car. (*Id.* at p. 203.) Hollie also denied that he went to the gas station with the intent of stealing gas. (*Id.* at p. 206.)

Lieutenant Darrell Brewer testified that he saw the car driven by Petitioner and followed it from a distance of two blocks without turning on his lights or sirens. (*Id.* at p. 99.) Meanwhile, Officer Price parked his vehicle in the roadway to serve as a roadblock. (*Id.* at pp. 149-50.) As Petitioner approached, Price exited the vehicle and yelled for Petitioner to stop. (*Id.* at p. 151.) Price testified that Petitioner initially stopped, but then Petitioner raised his hand as if to question "what, what?", placed his hands on the steering wheel, and accelerated. (*Id.* at p. 152.) Price then had to "blade" his body against the car to avoid being hit. (*Id.* at p. 153.) As he moved backwards, Price un-holstered his weapon and shot several rounds into the car. (*Id.* at pp. 152, 159.)

Hearing gunshots, Brewer accelerated and turned on his lights. (*Id.* at pp. 101-02.) Two additional cars, one marked and one unmarked, joined the chase. (*Id.* at p. 103.) At one point, an

officer traveling in the opposite direction observed Petitioner traveling eastbound in the westbound lane and had to maneuver her car to avoid a collision. (*Id.* at pp. 138-39.)

At times, the pursuit reached over 70 miles per hour. (*Id.* at p. 110.) Eventually, Petitioner approached a vacant lot and slowed in front of a heavy area of brush. (*Id.* at p. 111.) He ran into the brush and became tangled. (*Id.* at p. 112.) At that point, Brewer caught Petitioner and placed him in handcuffs. (*Id.*)

After presenting its last witness, the State entered Petitioner's driving record into evidence. (*Id.* at p. 209.) The State rested, and the trial court denied the motion of defense for acquittal. (*Id.* at pp. 210-11.) Petitioner then testified.

According to Petitioner, the events leading to his arrest began when he was riding a bike and Howard Carter approached in a car. (*Id.* at p. 212.) Carter asked Petitioner to get into the car because Carter thought Petitioner had a friend who detailed cars. (*Id.*) Hollie was in the car and suggested that Petitioner go with him to a gas station and drive away without paying for the gas. (*Id.*) Carter apparently got out of the car at this point. (*Id.*) Once at the gas station, Hollie pumped the gas and then motioned to Petitioner that he should drive away and take the car to get the detailing work done. (*Id.* at p. 213.) After finding out that his friend was not working that day, Petitioner decided to drive home and wait for Carter to retrieve the car. (*Id.*)

On the way home, Petitioner saw two friends and offered them a ride. (*Id.* at p. 213.) Soon after, Petitioner saw police traveling behind him without lights or sirens activated. (*Id.* at p. 214.) At some point, a police officer "whipped in front" of Petitioner, jumped out of the car, and began shooting. (*Id.* at p. 214.) Frightened, Petitioner ducked and kept driving. (*Id.* at p. 215.) Once the

officer was in front of the car, Petitioner swerved to avoid hitting him.  (*Id.*)  Petitioner then sped

off to get somewhere safe.  (*Id.*)

The jury found Petitioner guilty on all five counts.  (*Id.* at pp. 297-99.)  Following the

verdict, the trial court sentenced Petitioner to a total of thirty years in prison.[1]  (*Id.* at pp. 307-08.)

Petitioner appealed, and the Florida Fifth District Court of Appeals affirmed the convictions and

sentences *per curiam*.  (Ex. I.); *Jordan v. State*, 819 So. 2d 792 (Fla. 5th DCA 2002) (table).

Petitioner then filed a motion under Florida Rule of Criminal Procedure 3.850 for post-conviction

relief.  (Ex. K.)  The trial court denied the motion, and the Fifth District Court of Appeals affirmed

*per curiam*. (Ex. R; Ex. V); *Jordan v. State*, 924 So. 2d 825 (Fla. 5th DCA 2006) (table).

On September 15, 2006, Petitioner filed the instant petition for a writ of habeas corpus.

(Doc. No. 1.)  He asserts four grounds for relief: (1) that he received ineffective assistance of

counsel because trial counsel did not call two witnesses who could have potentially offered

exculpating evidence; (2) that he was denied the opportunity to appeal because the trial court did

not require the court reporter to record a portion of the trial; (3) that the trial court erred by not

continuing an evidentiary hearing to allow Petitioner to procure a witness; and (4) that he received

ineffective assistance of counsel because his trial counsel did not enter into evidence an inventory

of the items the police found in the car that Petitioner allegedly stole.  (*Id.*)

---

[1]     Petitioner received two consecutive fifteen year sentences for aggravated assault on
a law enforcement officer and fleeing and eluding, a five year sentence to run concurrently with the
other sentences for grand theft of an automobile, and time served on the remaining charges.  (Ex.
C, pp. 307-08; Ex. E.)

The State filed a response to the petition contesting all four grounds for relief.[2]   (Doc. No. 8.)  With respect to Petitioner's ineffective assistance of counsel claims, the State argues that the trial court correctly applied the standard established by *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984), to find that Petitioner's counsel was not constitutionally deficient.  (*Id.* at pp. 10, 12-13.) The State further contends that the trial court's failure to record a portion of the trial cannot be the basis for habeas relief because Petitioner has not alleged any specific prejudice from the error.  (*Id.* at p. 11.)  Finally, the State argues that the trial court's refusal to grant a continuance of an evidentiary hearing is not cognizable as a federal habeas claim because, at most, it involved the misapplication of a Florida procedural rule.  (*Id.* at pp. 11-12.)

## Standard of Review

Petitioner's application for a writ of habeas corpus is subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, habeas relief premised on a state court's legal error is limited to cases "resulting in a decision that was contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court."[3]  *Valle v. Sec'y of the Dept. of Corr.*, 459 F.3d 1206, 1211 (11th Cir. 2006) (citing 28 U.S.C. § 2254(d) (1)).

This statutory language provides two bases for reviewing a state court decision for legal error. Under the "contrary to clause," the writ may be granted "if the state court arrives at a

---

[2]      The State concedes that Petitioner exhausted all state remedies and filed his petition within the applicable statute of limitations.  (Doc. No. 8, pp. 6-7.)

[3]      The phrase "clearly established federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

conclusion opposite to that reached by the United States Supreme Court on a question of law or if

the state court decides a case differently than the United States Supreme Court has on a set of

materially indistinguishable facts." *Brown v. Sec'y, Dep't of Corr.*, No. 6:06-cv-140-PCF-KRS, 2007

WL 1100471, at *4 (M.D.Fla. Apr.11, 2007) (quoting *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.

2001)). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle from the United States Supreme

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

(quoting *Parker*, 244 F.3d at 835).

Regarding factual errors, federal courts may grant a writ of habeas corpus if the state court's

decision "was based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." *Brown*, 2007 WL 1100471 at *4 (quoting 28 U.S.C. § 2254(d)(2)).

However, federal courts are instructed to presume that the state court's determination of a factual

issue is correct, and the habeas petitioner has the burden to rebut this presumption of correctness by

clear and convincing evidence. *Id.* (citing *Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1)).

**Analysis**

**I.      Ineffective Assistance of Counsel**

The Supreme Court has established a two-part test for analyzing allegations of ineffective

assistance of counsel.  First, the petitioner must establish that counsel's performance was deficient

and "fell below an objective standard of reasonableness." *Stickland v. Washington*, 466 U.S. 668,

687-88 (1984).  Second, the petitioner must demonstrate that counsel's deficient performance

prejudiced his defense. *Id.*  In all cases, this judicial scrutiny "of counsel's performance must be

highly deferential." *Id.*  Moreover, the AEDPA adds an additional layer of deference by requiring

the petitioner to show that the trial court "applied *Strickland* to the facts of his case in an objectively

unreasonable manner." *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004) (citing *Bell v.*

*Cone*, 535 U.S. 685, 699 (2002)).

### A. Claim One: Failure to Depose and Present Testimony of Two Witnesses

Petitioner first argues that he received ineffective assistance of counsel because his trial

lawyer, Lorenzo Level, did not depose the passengers who were present in the car during the chase

or call them as witnesses at trial. (Doc. No. 1, p. 5.)  According to Petitioner, these witnesses would

have "undermined" the State's case by testifying that Petitioner did not intend to hit Officer Price

with the car.   (Doc. No. 10, p. 3.)

Petitioner raised this matter in his rule 3.850 motion for post-conviction relief.  (Ex. K.)  In

its order denying the motion, the trial court began its analysis by citing *Strickland*, 466 U.S. at 669

(1984).  (Ex. R, pp. 1-2.)  The court explained that "[f]or a defendant to successfully allege

ineffective assistance of counsel, the defendant must show: (1) counsel's representation fell below

an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result

of the proceeding would have been different."  (*Id.* at p. 1 (citing *Strickland*, 466 U.S. at 669)).

During a hearing on Petitioner's rule 3.850 motion, Level testified that he did not recall Petitioner

asking to call the two witnesses.  (Ex. P, pp. 16, 34.)  Level also testified that he thought the

witnesses' testimony would be damaging because they made contrary statements to the police after

the chase.  (*Id.* at p. 33.)  Furthermore, because the witnesses were juveniles and were present in

the car during the shooting, Level believed the testimony as a whole would be prejudicial to

Petitioner. (*Id.*)  The trial court found that Level's decision did not constitute ineffective assistance

of counsel for two reasons: (1) courts will not label the failure to call a witness as "ineffective"

where that witness could have been significantly impeached; and (2) whether counsel calls a witness is trial strategy and should not be second-guessed by the court. (Ex. R, pp. 1-2.) The State contends that the trial court correctly applied *Strickland* and its decision was not unreasonable or contrary to clearly established federal law. (Doc. No. 8, p. 10.)

The Court agrees with the trial court's analysis. The trial court correctly identified the *Strickland* standard and did not apply it in an unreasonable manner. Failing to call a particular witness constitutes ineffective assistance of counsel only when the absence of the witness's testimony amounts to the abandonment of a viable, outcome-changing defense. *See*, *e.g.*, *Tucker v. Renico*, 317 F. Supp. 2d 766, 775-76 (E.D. Mich. 2004) (trial counsel's failure in sexual assault case to introduce testimony that defendant had previous consensual relationship with the victim constituted ineffective assistance of counsel under *Strickland*); *Commonwealth v. Stonehouse*, 555 A.2d 772, 781-82 (Pa. 1989) (trial counsel's failure in homicide case to introduce evidence relevant to the defense of battered woman syndrome constituted ineffective assistance of counsel). In all other cases, the failure to call a witness is either an objectively-reasonable strategic decision or a non-prejudicial error. *See*, *e.g.*, *Beard v. State*, 548 So.2d 675, 675 (Fla. 5th DCA 1989).

Although the trial court perhaps spoke too broadly in stating that the failure to call a witness is a matter of strategy that "should not be second-guessed by the court," it is clear that Level's decision in this case was a strategic decision that deserves deference. *See Strickland*, 466 U.S. at 688. Because of the potentially damaging impeachment testimony due to their statements to the police after the incident, Level's decision not to call the passengers as witnesses was not objectively unreasonable. *Strickland*, 366 U.S. at 687-88.

Furthermore, Petitioner's allegations are insufficient to support relief on this claim. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. Mar. 7, 1996), *affirmed*, No. 96-15724, 1997 WL 31219 (9th Cir. Jan. 23, 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*. Petitioner has failed to present evidence of actual testimony or any affidavit of alleged testimony, and he therefore has not made the requisite factual showing.

Thus, the trial court did not err in rejecting Petitioner's ineffective assistance of counsel claim, and Petitioner's first ground for relief fails.

**B.       Claim Four: Failure to Introduce the Police Inventory into Evidence**

Petitioner argues that Level was ineffective for failing to introduce a police inventory of the allegedly stolen vehicle into evidence. (Doc. No. 1, p. 9.) Hollie originally told the police that Petitioner drove off with Hollie's wallet still in the car. (Ex. C. at pp. 188-89.) However, the police inventory of the items found in the car after Petitioner's arrest did not include the wallet. (Ex. M.) Petitioner contends that this inventory sheet could have been used to attack Hollie's credibility. (Doc. No. 10, p. 5.) During a hearing on Petitioner's Rule 3.850 motion, Level testified that he did not see how introducing the sheet into evidence would help Petitioner's case. (Ex. P, p. 29.) The trial court agreed with Level, and it further concluded that introducing the sheet into evidence would

not have changed the outcome of the trial.  (Ex. R, pp. 2-3.)  The State argues that the trial court

correctly applied *Strickland* to the facts of this case.  (Doc. No. 8, pp. 12-13.)

It is unclear how the inventory sheet could have served as effective impeachment evidence.

There are many potential explanations for why Hollie's wallet was either not in the car when

Petitioner was arrested or overlooked by the police when they created the inventory sheet.  The jury

would be unlikely to discredit Hollie's testimony based on this inconsistency alone.   More

importantly, Level's decision to forgo impeaching Hollie on a collateral matter is not the sort of

fundamental error that can be labeled as "objectively unreasonable." *Strickland*, 366 U.S. at 687-88.

In fact, an attempt to use the inventory sheet to impeach Hollie would arguably have constituted

impeachment on a collateral matter through extrinsic evidence, a tactic which is barred by the

Florida courts.  *Mariano v. State*, 933 So. 2d 111, 114 (Fla. 4th DCA 2006) (citing *Caruso v. State*,

645 So. 2d 389, 394 (Fla. 1994)).  As a result, Level was not ineffective for failing to introduce the

police inventory into evidence as impeachment of Hollie's testimony, and the trial court properly

rejected Petitioner's ineffective assistance of counsel claim.  Thus, Petitioner's fourth ground for

relief fails.

**II.      Claim Two: Unrecorded Portions of the Trial Proceedings**

Petitioner next contends that he was denied the opportunity to appeal because the trial court

did not require the court reporter to record a portion of the trial.  (Doc. No. 1, p. 6.)  Petitioner points

to page 157 of the transcript which indicates that "an off the record discussion was held" during the

testimony of Officer Price.  (Ex. C, p. 157.)  At that stage in the testimony, Price was explaining

through the use of a photograph where he parked his car to form a roadblock.  (*Id.*)  Immediately

before the off the record discussion, the prosecutor stated, "Your Honor, with the Court's

permission, we are conferring with each other to see if we agree with this photograph." (*Id.* at p. 156.)  The record does not specify whether the discussion involved Petitioner and his attorney or was between the Prosecutor and Defendant's counsel or was between the Prosecutor and some other person.[4]

Petitioner first raised this issue in his Rule 3.850 motion which the trial court denied on the rationale that Petitioner failed to show any prejudice because he did not specify what was said or might have been said during the discussion.  (Ex. L.)  Petitioner renews this argument in the instant petition, but he still does not specify what occurred during the conversation.  (Doc. No. 1, p. 6; Doc. No. 10, pp. 3-4.)  The State argues that this ground for relief fails because Petitioner cannot point to any harm from the conversation, and in any event there is no clearly established federal law which would treat such an error as a constitutional violation.  (Doc. No. 8, pp. 10-11.)  Petitioner filed a reply, arguing that the Court should recognize his *pro se* status and not deny his claim for the mere failure to recite a legal formality.  (Doc. No. 10, pp. 3-4.)

Of course, Petitioner is correct that the pleadings of *pro se* litigants are held to "less stringent standards" than those drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  But this rule of construction does not excuse a *pro se* litigant from establishing the essential elements of his claims.  *See id.*  Habeas petitions are not granted for harmless errors.  *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).  In this case, Petitioner is unable to point to any harm caused by the trial court's decision to allow an off the record discussion.

---

[4] It is not unusual during a trial for counsel to seek permission to conduct a discussion with opposing counsel or an assistant, privately, away from the jury and off the record, to confirm that a document which the attorney may seek to introduce into evidence is indeed the correct document or to ascertain if there will be objection to its admission.

Moreover, Petitioner has not cited to any United States Supreme Court authority that would treat this purported error as a violation of federal law.  It is conceivable that a trial court's refusal to record trial proceedings could prevent a criminal defendant from effectively appealing his conviction, and in such circumstances a violation of due process might exist.  *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 292-93 (1988) ("Even if a State has no constitutional obligation to grant criminal defendants a right to appeal, when it does establish appellate courts, the procedures employed by those courts must satisfy the Due Process Clause.") (Stevens, J., concurring in part and dissenting in part).  But the United States Supreme Court has never explicitly adopted this reasoning, and it therefore does not constitute "clearly established federal law."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  As result, the trial court's actions did not violate clearly established federal law, and Petitioner's second ground for relief fails.

**III.    Claim Three: Refusal to Continue an Evidentiary Hearing**

Petitioner argues that the trial court's refusal to continue the hearing on his rule 3.850 motion for post conviction relief to allow the live testimony of Howard Carter, the owner of the car Petitioner was convicted of stealing, was a violation of the Fourteenth and Sixth Amendments. (Doc. No. 1, p. 8.)  Petitioner had argued in his motion for post-conviction relief that Level's failure to depose or call Carter as a witness at trial constituted ineffective assistance of counsel.  (Ex. K.) Petitioner alleged that Carter had originally told the police that Petitioner took his car without permission.  (*Id.*)  At the time, Carter's rationale was to protect Hollie from getting into trouble with his probation officer, and accusing Petitioner of stealing the car was an effective way to cover up Hollie's scheme to steal gas.  (*Id.*)  According to Petitioner, Carter recanted his story once he found out that Petitioner was facing a long prison sentence for the various charges arising from the police

chase.  (Ex. P, p. 47.)  Petitioner stated that Carter was willing to testify for Petitioner at trial, but Level decided not to call him.  (*Id.*)

Level testified during the rule 3.850 hearing that he did not remember Petitioner requesting that Carter's deposition be taken.  (Ex. P., p. 23.)  Level also stated that he saw Carter as a witness for the State.  (*Id.* at p. 22.)  The only evidence that the State presented at trial on the issue of whether Petitioner had permission to drive the car was the testimony of Willie Hollie, who stated that Carter had loaned the car to him and did not give Petitioner permission to drive it.   (Ex. C, p. 203.)

By coincidence, Carter was later convicted of an unrelated homicide and placed in the same prison as Petitioner.  (Ex. P, p. 49.)  After finding out that Petitioner had an upcoming evidentiary hearing on his Rule 3.850 motion, Carter offered to draft an affidavit explaining that he had given Petitioner permission to drive the car and had originally lied to the police.  (*Id.* at pp. 49-50.)  The affidavit stated, "I knew Ronald Jordan had never been in trouble and thought nothing serious would happen to him.  But I now see otherwise and want to tell the truth.  On October 9, 2000, I loaned my car to Ronald Jordan not Willie."  (Ex. T, p. 7.)   Petitioner brought the affidavit with him to the Rule 3.850 hearing, but the trial court judge would not allow it into evidence because the document lacked the typical "indicia" of an affidavit such as a "jurat."  (Ex. P, p. 26)  In response, Petitioner's counsel explained that he had thought the affidavit would be sufficient and asked for a continuance of the hearing to call Carter to testify.  (*Id.* at p. 66.)  The judge rejected the offer, reasoning that Petitioner's lawyer had attempted to use the affidavit instead of presenting Carter's live testimony because he knew Carter would be impeached for his inconsistent statements.  (*Id.*)  The judge further stated that Carter, as a convicted murderer, was unlikely to tell the truth.  (*Id.*)  In any event, the

judge concluded, Petitioner's conviction for stealing the car was tangential to and ran concurrent with his convictions which formed the basis of the thirty year prison sentence.  (*Id.* at p. 72.)

Ultimately, the trial court denied Petitioner's ineffective assistance of counsel claim upon the rationale that Level's decision to not call Carter at trial was an objectively-reasonable strategic decision.  (Ex. R, p. 2.)  The court reasoned that Carter was subject to impeachment due to his contrary statements to the police, and it further found that Carter's testimony would not have changed the outcome of the trial.  (*Id.*)  Petitioner appealed the ruling, and the Florida Fifth District Court of Appeals affirmed without opinion.  (Ex. V); *Jordan v. State*, 924 So. 2d 825 (Fla. 5th DCA 2006) (table).  In its response to the instant petition, the State contends that Petitioner raises a mater of state law by arguing that the court should have granted a continuance to allow Carter to testify.  (Doc. No. 8, pp. 11-12.)  Petitioner filed a reply, arguing that federal courts may review the application of state procedural rules which have the effect of violating the Federal Constitution.  (Doc. No. 10, pp. 4-5.)

Petitioner's claim fails at the outset.  Essentially, his claim alleges a mistake in the Rule 3.850 proceeding and not a mistake in the underlying conviction.  "A habeas petition must allege the petitioner's detention violates the constitution, a federal statute, or a treaty. . . . [A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."  *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.), *cert. denied*, 493 U.S. 1012 (1989).  "Even where there may be some error in state post-conviction proceedings, this would not entitle [Petitioner] to federal habeas corpus relief since [Petitioner]'s claim here represents an attack on a proceeding collateral to [the] detention . . . and not on the detention itself. " *Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.), *cert. denied*, 469 U.S. 823 (1984) (quotation omitted) (citation omitted).

Petitioner contended in his Rule 3.850 motion that Level provided ineffective assistance of counsel because he failed to call Carter at trial. Petitioner does not argue that the trial court incorrectly applied federal law when it reviewed his ineffective assistance of counsel claim. Rather, Petitioner argues that the trial court violated his constitutional rights by making a procedural error during its review of his ineffective assistance of counsel claim. Because Petitioner's claim alleges errors in the state post-conviction review process, and not the underlying conviction, it is not addressable through federal habeas corpus proceedings. Accordingly, the claim must be denied.[5]

Any of Petitioner's contentions that are not specifically addressed herein are found to be without merit.

### Conclusion

The Petition Under 28 U.S.C. section 2254 for Habeas Corpus by a Person in State Custody (Doc. No. 1, filed Sept. 20, 2006) is **DISMISSED** with prejudice. The Clerk of Court is directed to enter judgment for the Respondent and close the case file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January _6__, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]     Petitioner has also failed to identify any clearly established federal law that gives him a right to call a particular witness during a post-conviction hearing. The Compulsory Process Clause demands that a criminal defendant be able to call witnesses in his favor, but Petitioner does not offer any case law extending this right to collateral proceedings. *Oken v. Warden, MSP*, 233 F.3d 86, 91-96 (1st Cir. 2000) (finding that the Confrontation and Compulsory Process Clauses of the Sixth Amendment do not apply to post-conviction relief hearings). Furthermore, to the extent Petitioner challenges the court's actions under Florida law, federal review is prohibited. 28 U.S.C. 2254(d).

Copies furnished to:

Counsel of Record
Unrepresented Party